IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


MARVIN KEMP                                                                                                PLAINTIFF


VS.                                            CASE NO. 4:16CV00694 PSH


NANCY A. BERRYHILL, Commissioner,
   Social Security Administration                                                          DEFENDANT


**ORDER**

      Plaintiff Marvin Kemp ("Kemp") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Supplemental Security Income ("SSI"). Kemp contends the Administrative Law Judge ("ALJ") erred in: (1) failing to make sufficient and adequate credibility findings; (2) failing to consider the combined impact of all of his impairments; (3) failing to rely upon a vocational expert's response to a hypothetical question which encompassed all of his limitations and impairments; and (4) failing to consider and discuss, seriously, all of the evidence of his disability. Three sub arguments are made under point four: the ALJ failed to properly consider the opinions of the treating physicians; the ALJ failed to fully develop the record; and the ALJ failed to consider additional records submitted after the administrative hearing. The parties ably summarized the medical records and the testimony given at the administrative hearing, which was conducted on May 21, 2015. The Court has carefully reviewed the record to determine whether there is substantial evidence to support Berryhill's decision. 42 U.S.C. § 405(g). Although Kemp alleged his disability began on February 4, 1999, his

1

application was protectively filed on December 11, 2011. Therefore, the proper inquiry before the Court is whether Kemp was disabled from December 11, 2011, through July 8, 2015, when the ALJ issued her decision.

*The Administrative Hearing:* Kemp was 36 years old at the time of the administrative hearing. He testified he was a high school graduate, but did not have good grades. He stated he had a driver's license and drove himself to the hearing. According to Kemp, he performed "side jobs" since 1999, served some time in the military, and spent about 2 ½ years in prison prior to his release late in 2011. (Tr. 38). The ALJ noted that, for social security purposes, Kemp did not have any past relevant work.[1] Kemp stated he lived with his mother, and his daily activities consisted mainly of reading and helping around the house. He testified to being able to prepare sandwiches, dress and bathe himself, and do some sweeping and vacuuming. Kemp stated he dealt often with pain in his feet and back, stemming from his flat feet. Kemp acknowledged that foot surgery was recommended in 2002, but "I refused to because if I was born with flat feet with no arch I feel like it ain't going to do nothing but make it worse because you can't build nothing that wasn't there." (Tr. 42). Kemp also acknowledged that Dr. Robinette, a podiatrist, recommended he get arch supports.

In addition to the back and foot pain, Kemp testified to having muscle spasms in his neck. At the time of the hearing, Dr. Mogmo ("Mogmo") was his treating physician, and had prescribed a back brace and a cane. The ALJ noted that Kemp had reported seeing little green men to one physician, and Kemp indicated he still sees them. Kemp said he was not seeing any mental health provider. Kemp cited the following barriers to his employment: back and foot pain, neck spasms,

---

[1] Kemp stated he graduated from a 2014 course in truck driving offered via state rehabilitation services. As a result, Kemp holds a license for commercial truck driving. However, he testified to being unable to actually perform the job due to foot and back complications.

2

seeing little green men, and his education. While he had drug and alcohol problems in his past, Kemp testified to being drug and alcohol free at the hearing, and to being subjected to monthly tests for the substances. Kemp previously indicated he was diagnosed with depression in 2007 and treated with medication. He also stated he did not get along well with people, was angry, and isolated himself.

Kemp listed the following medications: Neurontin for his nerves; Motrin for pain; Maxide for blood pressure; and Flexeril for spasms. The Flexeril was cited by Kemp as helping "a lot." (Tr. 51). The back brace and cane help a "whole lot," according to Kemp. (Tr. 52). Kemp stated a side effect of the medications was drowsiness. He testified to constant pain, and stated he had taken pain medications since 2002. While in prison in the Arkansas Department of Correction, Kemp stated he was given medications and a back brace. His job while incarcerated was cleaning, and he stated he injured himself lifting items over his weight limit. (Tr. 37-62).

A vocational expert, Mack Welch ("Welch"), testified. The ALJ asked Welch to assume a hypothetical worker of Kemp's age and background, with the ability to do light work with numerous restrictions.[2] Welch indicated such a worker could perform the jobs of hand packer and bench assembler. A second hypothetical question, assuming the worker could perform sedentary rather than light work, was posed, and Welch likewise testified that there were suitable jobs for such a worker. In response to subsequent questions, Welch stated there would be no available jobs if the worker would miss work or be late more than twice a month and required frequent unscheduled

---

[2] The restrictions were: able to occasionally stoop or crouch, limited to unskilled work, able to perform simple, routine, repetitive tasks, learned by rote, with few changes and little judgment in the workplace, interpersonal contact would be incidental to the work performed, and supervision would be simple, direct, and concrete. (Tr. 63).

3

breaks, or if the worker's concentration was such that he would be off-task for at least a third of the work day. (Tr. 62-66).

*The ALJ's Decision:* In her July 8, 2015 decision, the ALJ found Kemp had severe impairments of other and unspecified arthropathies, degenerative disc disease, personality disorders, and substance addiction disorders. The ALJ determined Kemp had the residual functional capacity ("RFC") to perform light work with restrictions which mirrored those contained in her initial hypothetical question posed to Welch and listed in footnote one herein. The ALJ, citing the relevant factors, found Kemp was "not entirely credible." (Tr. 16). In reaching this credibility conclusion, the ALJ specifically noted the absence of objective medical evidence corresponding to the subjective allegations of pain; Kemp's daily activities; the dosage, effectiveness, and side effects of medications; malingering noted by two physicians; Kemp's failure to follow medical advice to cease smoking; and the absence of any opinion by a treating physician that Kemp is disabled or has greater limitations than those contained in the RFC. The ALJ thoroughly reviewed the medical findings by both treating and consulting examiners, and also addressed the findings of the state agency physicians. In reaching her RFC conclusion, the ALJ ultimately assigned "significant weight" to the findings of Dr. Faucette, who performed a consultative mental examination, and "greater weight" to the findings of licensed psychological examiner Dr. Howell and treating physician Dr. Nguyen. She accorded only "some weight" to the findings of Dr. Pledger, who performed a consultative general physical examination, and the state agency physicians. Relying upon the testimony of Welch, the ALJ concluded Kemp was not disabled. (Tr. 11-24).

We now address Kemp's arguments.

**Credibility determination:** As previously noted, the ALJ addressed Kemp's credibility,

citing the relevant factors listed in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), and SSR 96-7p,[3] which provide the following guidance on issues of credibility:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of medication;
>
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322 (emphasis in original).

Kemp concedes that his credibility was not enhanced by a work record that was not "particularly strong," but points to his testimony about side effects from his medications and argues that the side effects interfered with his ability to perform basic work related activities. Plaintiff's brief at page 11. A review of the hearing transcript shows Kemp credited his Flexeril for helping "a lot" with his back spasms. (Tr. 51). When asked about the medications and possible side effects, Kemp stated, "I feel drowsy, sleepy sometimes, and just sometimes they have me just too drowsy." (Tr. 56). Kemp's argument is lacking, as his own testimony was not that the side effects interfered

---

[3] Although SSR 96-7p was superseded by SSR 16-3p on March 28, 2016, the previous policy was in effect at the time of Kemp's hearing and applies to this case.

with his ability to do basic work. Rather, he testified to occasional drowsiness.

Kemp also contends that the credibility assessment was deficient because he reported to treating physician Mogmo that his pain was constant, and this assertion was corroborated by a statement submitted by his mother. (Tr. 565, 265). The ALJ squarely addressed the subjective allegations of Kemp, including his hearing testimony of constant pain. Reporting of the pain to a physician does not change the subjective allegation to a medical finding. The ALJ also considered the statement from Kemp's mother, finding it was inconsistent with other substantial evidence, not entitled to controlling weight, and "less than credible." (Tr. 22). The ALJ did not err in this regard.

The factors cited by the ALJ in her credibility determination were persuasive. In particular, Kemp's work history, the objective medical evidence, and two physicians' impression that Kemp malingered strongly support the credibility conclusion. Substantial evidence supports the ALJ's ruling, and there is no merit to the first claim of Kemp.

**Failure to consider the combined effects of Kemp's impairments:** Kemp argues, "The ALJ ought to have considered all of Plaintiff's impairments in combination. She failed to do so in violation of 20 C.F.R. 416.923." Plaintiff's brief at page 12. In her decision, the ALJ defined disability as the inability to engage in substantial gainful activity "by reason of any medically determinable physical or mental *impairment or combination of impairments . . .*" (Tr. 11) (emphasis added). In making her RFC determination, the ALJ considered all of Kemp's impairments, including those that were not severe. (Tr. 13). Having defined disability as she did, the ALJ's finding that Kemp was not disabled inherently is a finding that his impairments, either singly or in combination, were considered. There is no merit to this claim. Even if there were some omission in this regard, Kemp does not suggest how his impairments combine to render him disabled.

6

**Reliance upon a deficient response by Welch to the hypothetical question:** Kemp faults the ALJ for relying on Welch's response to a hypothetical question formulated by the ALJ rather than a subsequent hypothetical question posed by his attorney. Kemp argues that the hypothetical question posed by his attorney reflected his limitations as set forth by medical providers Robinette, Nguyen, Nurse Summerville,[4] and Mogbo. Kemp does not elaborate on exactly how the cited medical providers imposed the limitations in his hypothetical question, i.e., inability to concentrate on the job for at least a third of the work day. These medical providers did not impose restrictions on Kemp, nor did they opine that he was disabled. Nguyen's recommendation for sedentary activities on Kemp's first visit is not an opinion that Kemp was permanently limited to such activities. (Tr. 473). Nguyen, on that same visit, reassured Kemp that he saw "nothing terrible that needs surgical interventions" and also noted the need for good arch supports and physical therapy. (Tr. 473). In summary, the ALJ's hypothetical question was rooted in her credibility assessment and her RFC determination. Kemp's argument of a deficient hypothetical question is another way of re-arguing his first claim and the ALJ's RFC finding. Kemp's first claim is without merit, for the reasons already provided, and substantial evidence supports the ALJ's RFC findings. There is no error in the foundation laid for the hypothetical question posed by the ALJ, and it follows that there was no error in relying upon Welch's response to the question.

**Failure to consider and discuss, seriously, all of the evidence of his disability:** Kemp

---

[4] Nurse Summerville executed a Health Classification and Restrictions form in 2011 when Kemp was incarcerated. (Tr. 339-340). This form does not support Kemp's allegations of numerous medical restrictions, as Nurse Summerville rated Kemp as M-2, signifying him to be in good physical condition. She also rated him to have excellent physical stamina, slightly limited mobility in his lower extremities, no mental health issues, and normal bone, joints, and muscles in his upper extremities. She found Kemp should avoid heavy exertional activities but otherwise did not find him limited.

7

alleges ALJ error in failing to give greater consideration to the opinions of Nguyen, Mogbo, the Arkansas Department of Correction, Robinette, and Nurse Petty.[5] According to Kemp, these providers were treating physicians and entitled to greater deference than other medical providers who saw him only on a consultative basis. While Kemp is correct that a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight, such an opinion may be discounted or even disregarded where other medical assessments are supported by better or more thorough medical evidence. *Fentress v. Berryhill*, ___ F.3d ___, 2017 WL 1450473 (8th Cir. April 25, 2017). The flaw in Kemp's argument is that he does not point to any opinions by the cited treating providers that he was disabled or limited beyond the RFC found by the ALJ. *Cf. Id.* (treating physician opined the claimant was unable to perform sustained gainful employment). Even if we were to assume some restrictions were imposed by these providers, the ALJ thoroughly addressed the medical evidence in the record, and substantial evidence supports the ALJ's analysis.

Kemp also alleges the ALJ failed to fully develop the record by failing to secure records from the Arkansas Rehabilitative Services, the Veteran's Administration, the Arkansas Department of Correction, and by failing to secure an updated evaluation from Dr. Faucette. The parties agree the ALJ is duty bound to develop the record fully and fairly. *Stormo v. Barnhart*, 377 F.3d 801 (8th Cir. 2004). The record before the Court, however, contains evidence from Arkansas Rehabilitative Services (Tr. 326-328, 417-427), the Veteran's Administration (Tr. 291-325), and the Arkansas

---

[5] The sole citation to Nurse Petty in the records appears to be to Neva Petty, a nurse at the Grimes Unit of the Arkansas Department of Correction, who saw Kemp due to his request for renewal of his medications on July 26, 2011. (Tr. 480). Kemp was noted to be classified as M-2, consistent with Nurse Summerville's records. Nurse Petty renewed Kemp's medications.

8

Department of Correction (Tr. 336-338, 341-342, 479-496). There is no error in failing to provide additional records from these sources, and Kemp points to no data which could be gleaned. Faucette performed a mental diagnostic evaluation[6] in April 2012. Kemp contends the ALJ was obligated to obtain an updated evaluation. We disagree. Kemp fails to suggest how the record was inadequate and how an updated report from Faucette would cure the inadequacy. The objective medical evidence in this case, including both a physical and mental consultative examination, was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is insufficient). Under these circumstances, we find no error in the ALJ's reliance upon the record before her.

Kemp's final argument is that the ALJ failed to consider additional records submitted after the administrative hearing. Specifically, Kemp argues that the Appeals Council erred by not considering the medical records from radiologist Dr. Harshfield and Chenal MRI showing "severe disablement." Plaintiff's brief at 12. The Notice of Appeals Council Action, dated August 12, 2016, informed Kemp that the Appeals Council denied his request for review. This Notice further informed Kemp that the Appeals Council examined additional records, including "medical records from Chenal MRI dated August 20, 2015." (Tr. 2). Those records, signed by Harshfield, are contained in the record before the Court at pages 558-563. Thus, the argument of Kemp is factually incorrect. The cited records were considered by the Appeals Council. There is no merit to this claim.

---

[6] Among other things, Dr. Faucette found Kemp "was blatantly malingering throughout today's evaluation and began acting as if he were experiencing auditory and visual hallucinations." (Tr. 378).

9

In summary, substantial evidence supports the determinations reached by the ALJ. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Kemp's complaint is dismissed with prejudice.

IT IS SO ORDERED this 26th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE